UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

ARGENI ALEXIS MORALES-OLIVIA,

    Petitioner,

v.                                                                          No. 6:26-CV-077-H

KRISTI NOEM, et al.,

    Respondents.

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Argeni Alexis Morales-Olivia, a native and citizen of Cuba, is one such alien, having illegally entered the United States over three years ago. His habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either his release or a bond hearing based on the Fifth Amendment's Due Process Clause. Dkt. No. 1.

*Buenrostro-Mendez* does not foreclose Morales-Olivia's due process claim. But neither the substantive nor procedural veins of due process afford alien petitioners a bond hearing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Morales-Olivia are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned.

Because the legal arguments and facts presented in the petition are indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus.

28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied.

1.   **Background**

In 2022, Morales-Olivia illegally crossed into the United States near Eagle Pass, Texas. Dkt. No. 1-1 at 8. The respondents arrested him and released him on recognizance. Dkt. No. 1 ¶ 1. Morales-Olivia was soon placed into removal proceedings with a Notice to Appear. Dkt. No. 1-1 at 8. The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*; *see* 8 U.S.C. § 1182(a)(6)(A)(i). In February 2026, however, ICE apprehended Morales-Olivia in Dallas and later transferred him to the Eden Detention Center in Eden, Texas, where he is being detained without bond. Dkt. No. 1 ¶ 30.

It is unclear whether Morales-Olivia challenged ICE's custody determination—including its decision that he must be detained without bond—before an immigration judge. But doing so would be futile in light of the Board of Immigration Appeals' opinion in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be

detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).[1]

Morales-Olivia filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states two claims for relief. First, Morales-Olivia alleges that his detention without bond violates his Fifth Amendment right to procedural due process. *Id.* ¶¶ 68–74. Second, Morales-Olivia contends that his detention without bond violates his Fifth Amendment right to substantive due process. *Id.* ¶¶ 75–80.

Morales-Olivia acknowledges that statutory claims are foreclosed by the Fifth Circuit's decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166

---

[1] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025). Moreover, in a March 6 order, the Ninth Circuit stayed the Central District's vacatur pending a ruling on the government's emergency motion for a stay pending appeal. *Maldonado Bautista v. DHS*, No. 26-1044, Dkt. No. 5 at 2 (9th Cir. March 6, 2026). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Morales-Olivia's petition does not present an exhaustion problem. *Id.* And for these reasons, insofar as Morales-Olivia believes he is entitled to relief on the basis of *Maldonado Bautista* (*see* Dkt. No. 1 ¶¶ 32, 39–40), he is mistaken.

F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

## 2.     Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## 3.     Analysis

As noted above, Morales-Olivia raises two claims in his habeas petition—both based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 68–80. The Court has considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[2] Even so, the Court considers the arguments raised in Morales-Olivia's briefing to address whether bond-less detention of aliens present in the United States violates the Constitution. The answer is no.

---

[2] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

A.      **Morales-Olivia is not entitled to a bond hearing under procedural due process.**

First, Morales-Olivia claims that the government's refusal to provide a bond hearing violates his right to procedural due process under the Fifth Amendment. Dkt. No. 1 ¶¶ 68–74. He argues that the Court should "apply the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Id.* ¶ 70. The Court is unpersuaded that *Mathews* applies under these circumstances. But either way, Morales-Olivia is not entitled to relief.

The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *DHS v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien

– 5 –

denied entry is concerned.") (quotation omitted)).  Critically, aliens who are released into the United States pending removal are "treated for due process purposes as if stopped at the border."  *Thuraissigiam*, 591 U.S. at 139.

As an "applicant for admission," Morales-Olivia has "only those rights regarding admission that Congress has provided by statute."  *Id.* at 140; *Landon*, 459 U.S. at 32.  With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission.  "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded."  *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  No part of the statute "says anything whatsoever about bond hearings."  *Id.*

In any event, not even *Mathews* requires a bond hearing.  Applying that test, courts consider: (1) the individual's private interest; (2) the risk of erroneous deprivation of the right absent further procedures; and (3) the government's interest.  424 U.S. at 335. "Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  *Rodriguez Diaz*, 53 F.4th at 1206 (citing *Landon*, 459 U.S. at 34).

Beginning with the first factor, Morales-Olivia surely has an "interest in his freedom from physical restraint."  Dkt. No. 1 ¶ 71.  But this liberty interest must be considered alongside the Supreme Court's clear admonition that "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process."  *Demore v. Kim*, 538 U.S. 510, 523 (2003).  Next, Morales-Olivia asserts that there is an "acute" "risk of error where the Government previously determined" that he "was suitable for release."  Dkt. No. 1 ¶ 72.  But even if Morales-Olivia is right about factor two, the risk of erroneous

deprivation is outweighed by the government's "sovereign prerogative[s]" in matters of immigration. *Landon*, 459 U.S. at 34. Thus, even if *Mathews* applies, Morales-Olivia is not entitled to a bond hearing as a matter of procedural due process.

### B.    Morales-Olivia is not entitled to a bond hearing under substantive due process.

Morales-Olivia's substantive due process claim fares no better. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to

– 7 –

accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

### 4.    Conclusion

In short, Morales-Olivia, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. And the Due Process Clause does not require a bond hearing in these circumstances. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on March 23, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE